[Cite as *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 130 Ohio St.3d 230, 2011-Ohio-3362.]

PLAIN LOCAL SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 130 Ohio St.3d 230, 2011-Ohio-3362.]

*Real property taxation—Appraiser who prepared appraisal report did not testify—Appraisal report offered opinion of value as of date other than the tax-lien date—BTA decision affirmed.*

(No. 2010-0052—Submitted June 21, 2011—Decided July 12, 2011.)

APPEAL from the Board of Tax Appeals, No. 2007-V-211.

_____

**Per Curiam.**

**{¶ 1}** In this appeal, the Plain Local Schools Board of Education ("school board") challenges a decision of the Board of Tax Appeals ("BTA") in which the BTA determined the true value of a two-story office building owned by Huntington National Bank to be $2,000,000, thereby affirming the decision of the Franklin County Board of Revision ("BOR") to reduce the value from the $2,650,000 originally assigned by the auditor. The school board advances three propositions of law that raise two main issues. First: Did the BOR and the BTA err by determining the value of real property based in part on factual material set forth in a written appraisal report when the appraiser who prepared the report did not testify? Second: Did the BOR and the BTA err by considering evidence contained in an appraisal report that offered an opinion of value as of a date other than the tax-lien date?

**{¶ 2}** With regard to the second issue, *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, is dispositive. In that case, an appraisal report was offered that certified an

opinion of value, but not as of the tax-lien date. Although the BTA could not rely on the certified opinion of value, we held that the appraisal did furnish evidence relevant to determining the value on the tax-lien date and that the "BTA properly conceived and carried out its duty" to determine the value of the property from the evidence before it. Id., ¶ 16. Our review of the circumstances in the present case leads us to the same conclusion, and that conclusion resolves the second issue against the school board.

{¶ 3} With respect to the first issue, the present case differs from *AP Hotels*. In that case, the appraiser who prepared the appraisal report did testify, while in this case, he did not. Although we agree with the school board that the owner's failure to offer the appraiser's testimony is significant and that in some circumstances, such a failure makes it improper to afford any consideration to the matters set forth in the appraisal report, we find no reversible error in the record before us. The school board did not advance a *hearsay* objection before either the BOR or the BTA. Moreover, another appraiser did testify concerning the appraisal report, and the school board did not object to her testimony on the grounds that she lacked personal knowledge of the matters contained in the report. By failing to object on those grounds, the school board waived those issues on appeal.

{¶ 4} Because we reject the school board's arguments on appeal, we affirm the decision of the BTA.

**Facts**

{¶ 5} The property at issue is a two-story office building that contained 9,240 square feet of space finished for office use and approximately 4,000 square feet of space equipped for branch-bank use. The building was vacant at the time of the BOR hearing on March 6, 2007, except for one tenant, Lawyers Title Corporation. As of the tax-lien date, January 1, 2005, there were three tenants at the site: Lawyers Title, a doctor, and a hair salon.

**{¶ 6}** On the tax-lien date, the property was owned by Unizan Bank. As of March 2006, Unizan was acquired by Huntington National Bank, and through that acquisition, Huntington obtained title to the property. The hair salon had vacated by the time of the acquisition in 2006, and the doctor defaulted on his lease and vacated sometime thereafter.

**{¶ 7}** Initially, Unizan filed a complaint for the 2005 tax year; after the acquisition, Huntington filed a second complaint on March 27, 2006. The first complaint received a case number of 05-832, and the second, 05-1420. The former was ultimately dismissed by the BOR as a duplicate filing.

**{¶ 8}** Huntington's evidence at the BOR consisted of the testimony of Richard Machinski, Huntington's vice president for corporate real estate, Lynn Putterbaugh, Huntington's lease administrator for corporate real estate, and Karen Blosser, an MAI appraiser with U.S. Realty Consultants. The school board stipulated to Blosser's qualifications as an appraiser. Huntington also offered an appraisal report prepared by James Powers of U.S. Realty Consultants, which stated an opinion of value as of May 1, 2004. Powers was still with U.S. Realty Consultants at the time of the BOR hearing, but according to Blosser, he was out of town. The appraisal had been prepared at the request of Machinski in connection with Huntington's acquisition of Unizan.

**{¶ 9}** Blosser testified that she had reviewed the appraisal report prepared by Powers and had independently inspected the property. Blosser testified that the building was currently "predominantly" vacant and appeared to be in good condition. Lawyers Title Corporation was in possession of a portion of the property, and its rent had declined from $16.22 per square foot at the time of the appraisal to $11.50 per square foot at the time of hearing. According to the lease abstract, that change occurred about six months after the tax-lien date. Blosser testified that the appraisal report was prepared in compliance with the Uniform Standards of Professional Appraisal Practice and the Appraisal

Institute's professional-practice standards. The report was consistent with Blosser's own inspection of the property and analysis of the leases.

{¶ 10} The appraisal relied on income and sales-comparison approaches, as is typical for an appraisal of income-producing property, and then reconciled the two approaches. The report looked at the rent from bank leases and office space in the area and concluded that the bank space could be rented for $25 per square foot and the office space could be rented for $15 per square foot, for a blended rate of $18 per square foot. A capitalization rate was extracted, and a 10 percent vacancy and credit loss was allowed, leading to a value per the income approach of $2,223,300. From three comparable sales, the sales-comparison approach derived a $130 per square foot figure as falling within the established value range, for a rounded value of $1,721,300 for the property as a whole. The income and sales-comparison approaches were reconciled for a final opinion that the property was worth $2,000,000 as of May 1, 2004.

{¶ 11} Blosser also testified that she had investigated the sale outcomes of two properties that were set forth as current listings in the May 2004 report, and she determined that those properties, which the report noted were listed at $125 per square foot, actually sold for $91 per square foot in 2005. Blosser opined that nothing had occurred between the May 1, 2004 report and the January 1, 2005 tax-lien date that would have made the value of the property fluctuate up or down substantially. Blosser went on to state that some information indicated that "perhaps" the value could be lower than the $2,000,000, but she did not find anything that "would suggest that $2,000,000 was not a reasonable value as of January 1, 2005." Upon further prompting, she agreed that the $2,000,000 figure constituted a "solid valuation" as of the tax-lien date.

{¶ 12} The school board was represented by counsel at the BOR hearing. Counsel addressed no questions to Blosser, but did object to the admission of the appraisal report on two grounds: first, the report did not offer an opinion of value

"as of" the tax-lien date, and second, the report was not prepared for ad valorem taxation purposes. Notably absent was any objection to the matters set forth in the appraisal report on the grounds that they constituted hearsay.

{¶ 13} On March 9, 2007, the BOR reached its decision. Acknowledging the school board's objection that the appraisal report did not offer a value of the property as of the tax-lien date, the board nonetheless relied on the report's valuation on the grounds that the report did "relate to the tax-lien date," given that the property "economically certainly had not improved by 1/1/05."

{¶ 14} The school board appealed to the BTA, where the parties waived a hearing and the school board renewed its objections. In its brief to the BTA, the school board renewed its argument that the appraisal report was inadmissible because it did not offer an opinion of value as of the tax-lien date, and it also asserted that Blosser's testimony was not sufficient evidence of value, because she had not performed an appraisal herself. However, the school board *did not assert* that the matters set forth in the appraisal report were inadmissible on hearsay grounds.

{¶ 15} In its December 15, 2009 decision, the BTA found that "Blosser ha[d] provided her testimonial opinion of the property's worth on [the] tax lien date" and that she had "supported that opinion with appraisal evidence of another's written report." *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Dec. 15, 2009), BTA No. 2007-V-211, 2009 WL 4894214, *4. Noting its duty to " 'make its own independent judgment based on its weighing of the evidence contained in [the BOR] transcript,' " id., quoting *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 15, 665 N.E.2d 1098, the BTA defined the task before it as considering "whether the record as a whole has sufficient competent and probative evidence of value for us to conclude that the [owner] carried its burden of proving the auditor's overvaluation before the BOR." Id. Although the BTA noted the significance of the fact that the appraiser

who prepared the appraisal report did not testify and found that it could not "place reliance on his ultimate opinion of value," id. at *5, the board considered the matters set forth in the appraisal report together with the testimony offered at the BOR and concluded that the preponderance of competent and probative evidence indicated that the value of the property was $2,000,000 as of the tax-lien date, id.[1]

**{¶ 16}** On appeal to this court, the school board for the first time advances a hearsay objection to the contents of the appraisal report, and it renews its argument that the appraisal report did not constitute evidence of the value of the property on the tax-lien date, since it valued the property as of a different date.

**Analysis**

**{¶ 17}** R.C. 5713.03 states the general rule that when a "tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price * * * to be the true value for taxation purposes." Accord *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, 25 O.O.2d 432, 195 N.E.2d 908 ("when such information is available," an "actual sale of [the] property between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so" will "usually determine the monetary value of the property"). We have acknowledged, however, that "such information is not usually available, and thus an appraisal becomes necessary," the goal of which is to "determine the amount which such property should bring if sold on the open market." Id. In reviewing appraisal evidence, the BTA " 'has wide discretion to determine the weight given to evidence and the credibility of witnesses before it.' " *Walters v. Knox Cty. Bd.*

---

1. Two members of the BTA concurred in the board's decision, but one member dissented. Citing several earlier BTA decisions, the dissent expressed the view that an appraisal report that certifies an opinion of value as of a date other than the tax-lien date does not constitute reliable and probative evidence of value absent the testimony of the person who prepared the report. *Plain Local Schools Bd. of Edn.*, BTA No. 2007-V-211, 2009 WL 4894214, at *5-6.

*of Revision* (1989), 47 Ohio St.3d 23, 25, 546 N.E.2d 932, quoting *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877. "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus.

*The school board waived its hearsay and its appraisal-practice objections by failing to advance them at either the BOR or the BTA*

{¶ 18} Under its first proposition of law, the school board argues that the appraisal report was itself inadmissible and, thus, Blosser's opinion of value was unsupported and did not furnish reliable and probative evidence of value. The school board rests its claim that the report was inadmissible on the fact that the appraiser who had prepared it did not testify, which, according to the school board, means that the report is hearsay.

{¶ 19} Huntington responds in part by pointing out that the school board lodged "no objection to Ms. Blosser's testimony or the factual information contained in the appraisal." That is correct. Although the school board did argue that the appraisal report was not relevant because it did not offer an opinion as of the tax-lien date and was not prepared for tax purposes, the school board *did not object to the report as hearsay*. Nor did the school board object to Blosser's testimony on the grounds that the witness lacked personal knowledge of the matters asserted in the appraisal report.

{¶ 20} We hold that the school board's failure to raise a hearsay objection to the report disposes of its first proposition of law. At the outset, we observe that

the Ohio Rules of Evidence do not directly apply in administrative proceedings, Evid.R. 101(A), but that an administrative tribunal such as the BOR or the BTA is justified in consulting the rules for guidance, see *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 415, 417, 659 N.E.2d 1223. Moreover, when it comes to the admissibility of evidence, the general rule is that "[h]earsay challenges are waived, absent plain error, if not objected to during the subject proceedings." *Felice's Main Street, Inc. v. Ohio Liquor Control Comm.*, Franklin App. No. 01AP-1405, 2002-Ohio-5962, ¶ 14 (in R.C. Chapter 119 appeal from the decision of the Liquor Control Commission, failure of license holder to appear and object to admission of hearsay documents waived the objection); *Enitnel, Inc. v. Ohio Liquor Control Comm.*, Franklin App. No. 02AP-583, 2002-Ohio-7034, ¶ 20 (same), citing *Felice's Main Street* and D. *Michael Smith Ents., Inc. v. Ohio Liquor Control Comm.* (Oct. 29, 1997), Summit App. No. 18332, 1997 WL 775658; *Stanger v. Worthington* (Sept. 23, 1997), Franklin App. No. 96APE12-1622, 1997 WL 596280, at *4 (failure to object to hearsay constituted a waiver in the context of an administrative appeal pursuant to R.C. Chapter 2506).

{¶ 21} The present case does not present a situation where considering the appraisal report constituted "plain error." That is so because the record contains indicia of reliability for the content of the appraisal report. Specifically, the testimony offered to the BOR shows that the appraisal report was prepared by an established and certified appraiser for a specific business purpose of Huntington National Bank and was used for that business purpose. Moreover, the contents of the report are certified by the appraiser who prepared the report. Because the consideration of the evidence contained within the appraisal report was not plain

error, the school board's failure to advance a hearsay objection waived the issue on appeal.[2]

{¶ 22} The school board does cite a case in support of its argument. In *Almondtree Apts. of Columbus, Ltd. v. Franklin Cty. Bd. of Revision* (June 28, 1988), Franklin App. No. 87AP-1216, 1988 WL 70505, the owner's appraiser had testified that a sale of the property had not been an arm's-length sale for various reasons, and then offered an appraisal report with an opinion of value, which the BTA ultimately found to be the value of the property. The Tenth District reversed, characterizing the "entire testimony of the appraiser, relating to the key issue of whether the recent sale was an arm's-length transaction," as being "based upon the rankest type of hearsay." Id. at *3. Specifically, the appraiser apparently based his testimony on the arm's-length issue on "statements of employees of the taxpayer and the evaluation of documents not placed into evidence." Id.

{¶ 23} The school board's citation of *Almondtree Apts.* is not persuasive. The decision in that case does not address whether or not a hearsay objection was raised below. As a result, the case furnishes no authority on the issue whether an objection is necessary to prevent waiver. Moreover, *Almondtree Apts.* involved the owner's claim that a sale was not at arm's length, and the owner did not offer the testimony of the witnesses who had talked to the appraiser or the documents

---

2. The lay testimony of Huntington's vice president for corporate real estate, Machinski, who laid a foundation for the appraisal report, along with the expert testimony of Blosser concerning the report, decisively distinguish this case from the earlier BTA decisions cited by the dissenting member of the BTA. In those cases, the proponent of the written appraisal reports offered the reports themselves, but did not offer any testimony that would authenticate or corroborate the written reports. See, e.g., *Speca v. Montgomery Cty. Bd. of Revision* (Mar. 25, 2008), BTA No. 2006-K-2144, 2008 WL 902389, at *5-6 (disregarding written appraisal reports presented by an owner where there was apparently no lay or expert testimony corroborating the matters set forth in the report); *Evenson v. Erie Cty. Bd. of Revision* (Apr. 12, 2002), BTA No. 2001-V-770, 2002 WL 595179, at *1-2 (same). Additionally, in *Northridge Local Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision* (Jan. 28, 2005), BTA No. 2004-B-35, 2005 WL 273500, at *1, the board of education specifically objected before the BOR to any consideration of the appraisal reports on the ground that the appraisers had not testified—the very objection that is notably absent in this case.

upon which the appraiser had relied, but merely offered its appraiser's testimony setting forth his opinion based on that underlying evidence. By contrast, the appraiser's report in the present case contains standard market data that appraisers regularly compile, and as already discussed, the record in the present case contains additional indicia of the reliability of the appraisal information.

{¶ 24} Finally, the school board argues in its reply brief that Blosser's testimony in connection with the appraisal report should not have been considered, because Blosser's testimony allegedly violates appraisal-practice standards. Specifically, the school board asserts that "[n]o appraiser can offer the BOR or the BTA an opinion of value when the appraiser has not appraised the property" and charges that Blosser violated appraisal-practice standards by offering testimony on the basis of an appraisal report that she herself did not prepare. The school board relies on Standards Rule 1-4 of the Uniform Standards of Professional Appraisal Practice ("USPAP"), which states, "In developing a real property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results." http://www.uspap.org/USPAP/ stds/sr1_4.htm. The school board contends that because Blosser herself did not perform these tasks with respect to the appraisal report, USPAP Standards Rule 1-4 did not permit her to offer an opinion of value—the result being that the BOR and the BTA ought to have disallowed or disregarded her testimony.

{¶ 25} We conclude that this argument is not properly before us. The school board failed to raise the issue of the alleged violation of the appraisal-practice standards until it filed its reply brief in this court. We see no reason why an alleged violation of appraisal-practice standards, if it affects the admissibility of testimony, should not be made the subject of a timely objection. Because no such objection was advanced below, the claim that a violation of practice standards made proffered evidence inadmissible has been waived, along with the hearsay objection.

*The "as of" date on the appraisal report does not justify reversing the BTA's*
*decision, because the decision is supported by reliable and probative evidence*

{¶ 26} At the BOR, the school board did raise the issue that the appraisal report expressed an opinion of value as of May 1, 2004, which was not the tax-lien date. We have held that " 'the BTA must base its decision on an opinion of true value that expresses a value for the property as of the tax lien date of the year in question.' " (Emphasis deleted.) *AP Hotels*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 9, quoting *Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 552, 555, 664 N.E.2d 922; see also *Freshwater v. Belmont Cty. Bd. of Revision* (1997), 80 Ohio St.3d 26, 30, 684 N.E.2d 304. It would therefore have been error for the BTA to rely on the appraisal report's certification of value as of May 1, 2004, as a determination of value for tax year 2005.

{¶ 27} But that is not what the BTA did. Instead, the BTA placed its reliance on the testimony of Blosser, an appraiser who expressed her opinion that the $2,000,000 figure, which originally expressed an opinion of value as of May 1, 2004, constituted a "solid valuation" as of January 1, 2005, the tax-lien date. According to the BTA, "Blosser has provided her testimonial opinion of the property's worth on [the] tax lien date," and she "supported that opinion with appraisal evidence of another's written report." *Plain Local Schools Bd. of Edn.*, BTA No. 2007-V-211, at 7.

{¶ 28} With regard to the as-of-date issue, the circumstances of the present case parallel those of *AP Hotels*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115. In that case, the BTA considered an appraisal report that expressed an opinion that as of January 1, 2003, the value of the property was $1,600,000, along with the oral testimony of the appraiser who had prepared the report. Among other things, the appraiser answered the question whether in his opinion, the value of the property as of January 1, 2002, would be higher or lower

than its value as of January 1, 2003, by saying: "I think the number would be the same." Id. at ¶ 6 - 7. The BTA regarded that testimony in light of the information contained within the appraisal report and determined that the matters set forth in the written report supported the oral testimony and justified the conclusion that the value as of January 1, 2002, was $1,600,000 as well. In affirming, we emphasized the BTA's duty to perform an independent valuation and concluded that it had reached a reasonable and lawful decision, given the record before it. Accord *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 24-25 (when evidence in the record negates the auditor's valuation and the record contains sufficient evidence to permit the BTA to conduct an independent valuation of the property, the BTA should do so).

{¶ 29} Our review of the BTA's decision in this case leads us to reach the same conclusion. Once again, the BTA has regarded the content of the written appraisal report as evidence that is potentially relevant to the value of the property as of the tax-lien date at issue, even though the report itself uses that data to arrive at an opinion of value for a different date. In *AP Hotels* at ¶ 16, we stated that "[a]lthough the appraiser did not certify his ultimate opinion of value as of the 2002 tax-lien date, his certification that the 'statements of fact contained in this report are true and accurate' did permit the BTA to use the factual information set forth in the report." The written appraisal report in the present case contains a similar certification, and its content was therefore available to the BTA as a body of evidence in support of its determination of value.

{¶ 30} The standard for reviewing the BTA's determination as to the credibility of witnesses and the weight to be given their testimony is highly deferential: we will not reverse unless the appellant demonstrates an abuse of discretion. *EOP-BP Tower*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 14, citing *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155,

157, 573 N.E.2d 661. The school board has not established that the BTA's determination involves an abuse of its discretion as the finder of fact.[3]

**Conclusion**

**{¶ 31}** For the reasons set forth, we reject the school board's contentions and hold that the BTA acted reasonably and lawfully in determining that the value of the property was $2,000,000 as of January 1, 2005. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol C. Fox, for appellant.

Means, Bichimer, Burkholder & Baker, L.P.A., and Robert M. Morrow, for appellee Huntington National Bank.

————————————

---

3. The school board's second proposition of law is rendered moot by our foregoing determinations. It asserts that an opinion of value unsupported by evidence is not competent to establish value. Because the data in the appraisal report was evidence available to the BTA, Blosser's opinion of value did not lack an evidentiary basis.