[Cite as *Marra v. Auburn Twp. Zoning Inspector*, 2020-Ohio-6678.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| SANDY MARRA, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2020-G-0256** |
| AUBURN TOWNSHIP ZONING INSPECTOR, et al., | : | |
| | : | |
| Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas.
Case No. 2019 A 000662.

Judgment: Affirmed.


*Charles V. Longo* and *Gregory B. Gipson*, Charles V. Longo Co., L.P.A., 25550 Chagrin Boulevard, Suite 320, Beachwood, OH 44122 (For Appellant).

*Gregory A. Beck* and *Tonya J. Rogers*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Appellees).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Sandy Marra ("Ms. Marra"), appeals from the May 11, 2020 decision and judgment of the Geauga County Court of Common Pleas, which denied her administrative appeal and affirmed a decision of the Auburn Township Board of Zoning Appeals ("BZA"). The judgment is affirmed.

{¶2}   Ms. Marra and non-party Anthony Marra III own a single-family home located on a cul-de-sac in Auburn Township, Geauga County, Ohio.  Ms. Marra resides in the home with her minor children.

{¶3}   The home is in an R-2 Residential District, the purpose of which, according to the Auburn Township Zoning Resolution, is "to provide for residential neighborhoods of a rural character with maximum densities as specified herein."  The Resolution further provides, at 4.03(a), that "[l]ots and structures shall be used in compliance with Schedule 4.03(k).  Only the permitted main uses defined in the Resolution and specified on the Schedule under a given district shall be permitted in that district; and only those conditional uses so defined and specified may be approved."  Additionally, at 4.03(c), "[a]ny use not specifically listed in this Resolution shall not be permitted, nor shall any zoning certificate be issued therefore, unless and until a zoning amendment to provide for such use is in effect or a variance has been granted in accordance with this Resolution."

{¶4}   Under Schedule 4.03(k), the Permitted Main Uses in R-2 Districts are limited to agriculture, single family dwellings, adult group homes, adult family homes, and public facilities, while Conditional Uses are limited to cemeteries, churches, golf courses, and quarries.  "Single family dwelling," the only use relevant herein, is defined in the Resolution as "DWELLING-ONE FAMILY: [a] dwelling consisting of one (1) detached dwelling unit occupied by one (1) family only."  The Resolution also includes the following pertinent definitions:

> ACCESSORY USE: A subordinate use of a building, structure, or lot * * *: (1) the use of which is clearly incidental to the use of the principal building, structure, or use of a lot; (2) which is customary in connection with the principal building, structure, or use of a lot;

2

and (3) which is located on the same lot with the principal building, structure, or use.

BED-AND-BREAKFAST: A private, owner-occupied residence where guest bedrooms are offered for compensation by the day, week or month, for lodging, or meals and lodging, and in which no cooking or similar housekeeping equipment is provided for guest use.

BUILDING: A temporary or permanent structure, other than a mobile home, affixed to or resting on the ground and designed or intended for the support, enclosure, shelter, or protection of persons, animals, chattels, or property.

DWELLING: Any building or structure (except a mobile home or recreational vehicle as defined herein) which is wholly or partly used or intended to be used for living or sleeping by one or more human occupants.

FAMILY: One (1) or more persons related by blood, adoption, guardianship or marriage, living and cooking together as a single housekeeping unit, exclusive of live-in hired employees. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, guardianship or marriage shall be deemed to constitute a family, exclusive of live-in hired employees. A family shall not include any society, club, fraternity, sorority, association, lodge, federation, coterie, or a like organization; any group of individuals whose association is temporary or seasonal in nature; and any group of individuals who are in a group living arrangement as a result of criminal offenses.

HOTEL OR MOTEL: A building in which temporary lodging is provided and offered to the public for compensation.

STRUCTURE: Anything constructed or erected that requires location on the ground or is attached to something having location on the ground.

{¶5} Ms. Marra advertised the home on Airbnb as a "Castle in the Woods" on a "very small cul-de-sac"; with 6 bedrooms, 16 beds, and 4.5 baths; accommodating "16+ guests" or, for an additional fee, "up to 24" guests; self-check-in with the "doorman" or "building staff" "after 5 PM and check out by 12 PM"; $60.00 per night for the "entire

3

home and yard, unless we are there sleeping in the master bedroom. * * * We prefer to sleep in the home, especially if it is a small group of renters. If it is a large group, we will leave." She advertised the home on VRBO as a "Castle in the Forest," "in a small cul-de-sac," "13.1 miles to the nearest ski lift"; with a 3-car garage, 6 bedrooms, 4.5 baths, and sleeps 20; rental includes parking, linens, washer and dryer, use of a kitchen with appliances, utensils, and pantry items. The house was also advertised as available for parties and events for no more than 20 people in the home. Numerous online reviews began to appear in October 2018 and continued into May 2019.

{¶6} After receiving complaints from Ms. Marra's neighbors, on April 12, 2019, the Zoning Inspector for Auburn Township, Frank Kitko ("Inspector Kitko"), conducted an investigation. He then sent the Marras a letter, stating the use of their home "as temporary lodging and offered to the public" is not permitted by the township's zoning resolution and "needs to cease by May 1, 2019." Counsel for Ms. Marra responded to Inspector Kitko by letter on April 22, 2019, stating Ms. Marra "is of the belief that her use of her home is in full compliance with all lawful zoning enactments of Auburn Township"; and again on April 29, 2019, indicating he had advised Ms. Marra "to maintain the status quo indefinitely (at least until she has received my further advice)." (Emphasis sic.)

{¶7} On May 6, 2019, Inspector Kitko sent the Marras another letter, which stated: "It appears that the property/house * * * is in violation of the Auburn Township Zoning Resolution. This parcel is located in an R-2 residential zoning district, which allows for single-family dwellings [Schedule 4.03(k)]. It appears the additional use on this property as temporary lodging offered to the public for a fee is not permitted in this

4

zoning district [prohibited uses 4.03c: Any use not specifically listed…shall not be permitted…]. You have the right to appeal * * *."

{¶8}   Ms. Marra, by and through counsel, filled out a form notice of appeal and filed it with the BZA on May 28, 2019, seeking dismissal of the notice of violation. The form includes a request for the appellant to "provide the specific zoning regulations from which the error occurred." The typed response on Ms. Marra's notice of appeal provides that "the attached Statement of Appellant is intended to supplement Appellant's answer to the information provided in Appellant's response[.]" The attached Statement of Appellant reads as follows, in relevant part:

> Sandy Marra is the equitable owner of the property * * * in Auburn Township. At the present time Anthony J. Marra, III, her former husband, who has no actual financial interest in the property, remains as an owner on the records of Geauga County.
>
> Appellant's home is located in an R-2 zoning district. The description of an R-2 zoning district is found at Article 4, Section 4.01 of Auburn Township's Zoning Resolution. The residential district schedule that is part of Article 4 (4.03(k)) indicates that her dwelling unit is a 'permitted main use' in an R-2 District. As a permitted main use it does not need to obtain a conditional use permit from the Township's Board of Trustees, or the Township's Zoning Commission. Appellant lives in the home with the minor children of the marriage.
>
> Other permitted main uses in an R-2 District include adult group homes, and adult family homes. Presumably, those two uses would include homes for unrelated persons who are in the process of recovering from serious drug or alcohol addiction or other physical or emotional conditions. Only recently did the Trustees of the Township place a restriction on the types of persons who could live in an adult group home or family home. That restriction was limited to homes for persons who had been convicted of crimes.
>
> Appellant is not questioning why the Trustees chose to make these adult group home and adult family homes in R-2 Districts permitted main uses rather than conditional uses. But one thing is clear:

5

Few, if any, of those group homes will consist only of members of one traditional family.

*Only one family resides in Appellant's home. The fact that she may from time to time rent out all or a portion of her home to persons who are not members of her family for a short period of time make her [sic] less of a one-family dwelling.* [Emphasis added.]

Appellant does not know why at this point in time the Zoning Inspector chose to decide that her home was no longer a one-family dwelling unit, and that her use of her home was now a prohibited use under Section 4.03(b) because it was a use not specifically listed in the Township's Zoning Resolution.

Appellant respectfully submits that Sections 4.03(k) of Article 4 of the Zoning Resolution, both as a general enactment of the Township, and as applied by the Zoning Inspector in the instant case, is vague and indefinite, and denies to Appellant rights guaranteed to her by Article 1, Section 16 of the Ohio Constitution. * * *

{¶9} After the notice of appeal was filed, Ms. Marra obtained new counsel.

{¶10} Notice of a public hearing was issued on June 21, 2019, which described the matter as "an appeal alleging error by the Zoning Inspector in his determination of an accessory use to a main use, single family dwelling, located * * * in an R-2 zoning district. This accessory use (Bed & Breakfast; Hotel/Motel) is not a listed use, therefore it is not permitted in an R-2 zoning district, prohibited uses [4.03c: Any use not specifically listed…shall not be permitted…]." The BZA held the public hearing on July 23, 2019. Ms. Marra was represented by counsel but did not personally appear.

{¶11} Inspector Kitko testified that Ms. Marras' property is "in an R-2 zoning district, which is single family dwelling, and my interpretation of a single-family dwelling is just that, a family living in a house"; the property is being rented to guests for a fee and is "advertised as a bed and breakfast"; and Ms. Marra sometimes stays in the house while guests are present. He further testified that "we've read some of the

6

reviews and everything, and my feeling is, if you want to do that, build the structure accordingly. Go to the building department, have it built to commercial code, have the Fire Department come and inspect to make sure of the safety and everything, and none of that, to our knowledge, has been done." Assistant Zoning Inspector Jane Hardy corroborated by testifying that Ms. Marra offers her structure, building, or dwelling as temporary lodging for compensation. The Zoning Inspector's investigation was introduced into the record as an exhibit.

{¶12} Auburn Township Fire Chief John Phillips testified that he would not consider 24 people in the home to be "a safe use. My concern would be egress, doors, and how they get up and down the first and second floors. There's a number of issues that could come into play * * * things like fire alarm systems, sprinklers, et cetera, are usually considered in places of that nature." Also included in the transcript is a letter to the Fire Chief from Auburn Fire Department's Chief Inspector, which states that if Ms. Marra received approval for her use of the property, then it would reclassify the building as an R-1. This reclassification would entail "an exuberant amount of modifications in order to comply with the Ohio Fire Code. * * * [I]t should be made clear that this type of business can be and should be construed as having a potential of a high risk to the transient occupants as they are not familiar with the surroundings. * * * The structure was never designed to house multiple, individual families, thus is why it would be imperative to make the necessary changes to assure the safety of all involved."

{¶13} Testimony was also heard from two of Ms. Marra's neighbors. The first testified as follows, in relevant part:

> I live right across from Ms. Marra, and I can tell you that this house has been rented by many people, without a doubt, and it's also

7

advertised on the internet as an Airbnb. * * * [S]he is running a business. An Airbnb is a business. And it's not a business district. The Zoning Commission has decided it's a residential district. * * * It's also a hazard. * * * Because it's a small cul-de-sac. If an emergency vehicle or several have to come in, they cannot. * * * There can be up to 24 people staying in that home. That's absurd. * * * She's also compromised my financials in terms of how much I paid for that house.

The second neighbor testified as follows, in relevant part:

In recent months, after seeing an unusual amount of cars coming and going from Sandy's property, we learned that she is now renting it on Airbnb and HomeAway, possibly others. * * * She advertises that the home will at any time accommodate 16-plus guests and up to 24. * * * While searching for our home, it certainly would have affected our decision to learn that one of the five homes in our cul-de-sac was being virtually used as a motel and/or party event/retreat center. We are concerned about the constant coming-and-goings of strangers, overflow parking onto the cul-de-sac and how this will affect our property values and overall quality of life.

{¶14} Ms. Marra was not present at the hearing to testify, answer questions, or clarify any of the BZA's concerns. Counsel for Ms. Marra conducted cross-examination but offered no witnesses and refused to answer questions from the BZA. The only evidence produced by Ms. Marra's counsel were Inspector Kitko's letters and the Zoning Resolution.

{¶15} The BZA voted unanimously to deny Ms. Marra's appeal. On August 6, 2019, at a public meeting, the BZA approved its minutes from the hearing and issued Findings of Fact. The BZA found that the Marras were cited by the Zoning Inspector for offering temporary lodging to the public for a fee, which is not a listed use, and therefore not a permitted use, for an R-2 District. It further found that, in the Zoning Inspector's professional opinion, regardless of whether there is a specific definition for the current accessory use of the property, it was not a listed use and therefore not permitted.

8

Additionally, with Ms. Marra staying in the home during the rentals, it is no longer a "single-family dwelling." The BZA found that the fact there is an accessory use of the dwelling being conducted on the property was solidified by the Statement of Appellant offered in her notice of appeal. The BZA then issued formal notice to Ms. Marra and her counsel that the appeal was denied.

{¶16} Ms. Marra appealed this decision to the Geauga County Court of Common Pleas. On October 2, 2019, the BZA filed the complete transcript of the hearing, including the original papers, testimony, evidence, exhibits, and findings of fact.

{¶17} The parties submitted briefs for the lower court's review. Ms. Marra attached an affidavit to her brief, offering sworn testimony explaining her use of the property. Inspector Kitko and the Auburn Township Board of Trustees (jointly, "Auburn"), within their brief, moved to strike Ms. Marra's affidavit on the basis that she had waived her right to testify by electing not to attend the BZA hearing. In a reply brief, Ms. Marra asserted that she should be permitted to supplement the record because the BZA "erroneously considered as evidence the 'Statement of Appellant' submitted by prior counsel," and her current "counsel did not anticipate, and was not notified, that prior counsel's filing would be accepted as part of the record *and incorporated into fact findings* [sic]."

{¶18} The lower court denied Ms. Marra's request for an oral hearing and issued its decision on May 11, 2020, concluding:

> The Auburn Township Zoning Resolution is a permissive resolution: all non-permitted uses are prohibited. In an R-2 district the Resolution does not permit use of a single family home to provide temporary lodging to the public for a fee. After presuming the BZA's decision was reasonable and valid, giving deference to the BZA's resolution of evidentiary conflicts, and reviewing the

9

transcript, the Court finds and determines: the BZA's determination is supported by a preponderance of substantial, reliable, and probative evidence. The BZA's decision is affirmed.

In addition to affirming the BZA's decision, the lower court granted Auburn's motion to strike the affidavit attached to Ms. Marra's brief and denied Ms. Marra's request to remove her Statement of Appellant from the BZA's transcript.

{¶19} From this decision, Ms. Marra raises two assignments of error for our review:

> [1.] The Trial Court erred in holding that the record to be complete [sic] and that Appellant had waived any opportunity to supplement or object to the Transcript pursuant to O.R.C. 2506.03 because Appellant had been unable to object in any prior proceeding.
>
> [2.] The Trial Court ignored the preponderance of the evidence and abused its discretion by finding that the Board's decision was based upon substantial, reliable, and probative evidence when in fact the evidence relied upon by the Board lacked those characteristics, and the evidence adduced by testimony contradicted the Board's and the Inspector's positions.

{¶20} Pursuant to R.C. 2506.04, "the judgment of the court [of common pleas] may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

{¶21} "R.C. 2506.04 requires the court of appeals to affirm unless the court of appeals finds, as a matter of law, that the decision *of the common pleas court* is not supported by a preponderance of reliable, probative, and substantial evidence." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶27 (emphasis sic). "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only

when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Id.* at ¶30.

{¶22} Under her first assignment of error, Ms. Marra argues the lower court erred by refusing to consider her affidavit because the Statement of Appellant attached to her notice of appeal to the BZA was erroneously considered as evidence by the BZA.

{¶23} R.C. 2506.03(A) provides that the hearing of an appeal from the BZA to the court of common pleas "shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following [enumerated exceptions] applies[.]" If any of the exceptions apply, "the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party." R.C. 2506.03(B). Under R.C. 2506.02, a complete transcript includes "all the *original papers*, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision." (Emphasis added.)

{¶24} In her brief to the lower court, Ms. Marra attached an affidavit in which she offered sworn testimony to clarify and refute the Statement of Appellant that was submitted with her notice of appeal by prior counsel. The lower court struck the affidavit from the record, ruling that Ms. Marra waived her right to testify by failing to appear at the BZA hearing and that her counsel waived any objection by failing to move to strike the Statement at the BZA hearing.

{¶25} Ms. Marra argues, however, that neither she nor her counsel had an opportunity to contest the accuracy or inclusion of the Statement because it was not

11

accepted as evidence on the record; it set forth arguments never advanced by current counsel; and it was incorporated into the Findings of Fact subsequent to the BZA's vote to deny her appeal. This argument is not well taken.

{¶26} Just as a complaint or notice of appeal filed in any civil case, the Statement of Appellant was part of an "original paper" of the proceeding. As such, it was appropriately included as part of the transcript, pursuant to R.C. 2506.02, and the exceptions listed in R.C. 2506.03 do not apply. Ms. Marra cannot simply supplement the transcript on appeal with testimony that refutes the Statement she, through counsel, submitted to the BZA. The time to refute any misconception regarding a statement made in one of her own filings was at the BZA hearing. Ms. Marra did not appear and thus waived her right to testify. Her counsel did not move to strike the Statement and thus waived her right to object at the appellate level. *Carrolls Corp. v. Willoughby Planning Comm.*, 11th Dist. Lake No. 2005-L-112, 2006-Ohio-3209, ¶31, quoting *Alberini v. Warren Twp. Bd. of Trustees*, 11th Dist. Trumbull No. 4083, 1989 WL 140177, *2 (Nov. 17, 1989) ("'Generally, the failure to object or otherwise bring an error to the trial court's attention constitutes a waiver of that error on appeal. This rule also applies in appeals to the common pleas court from an administrative hearing.'"). Further, there is no requirement that the BZA must move to incorporate the original papers on the record at the hearing.

{¶27} It was not erroneous for the BZA to consider the Statement of Appellant attached to Ms. Marra's notice of appeal in reaching its decision. Accordingly, the lower court did not err in striking from the record Ms. Marra's affidavit with supplemental testimony. *See Shaker Blvd. Co. v. Cleveland*, 31 Ohio App.2d 199, 211 (8th

12

Dist.1972), citing R.C. 2506.03 and *Grant v. Washington Twp.*, 1 Ohio App.2d 84, 86 (2d Dist.1963) ("the mere filing of an affidavit does not automatically * * * compel the Court of Common Pleas to take additional evidence unless the record will support some one of the deficiencies enumerated in the statute"); *Ward v. Cuyahoga Falls Bd. of Zoning*, 9th Dist. Summit No. 27848, 2016-Ohio-7091, ¶16 (trial court did not err in prohibiting appellant from filing additional evidence when appellant did not claim the record was insufficient per R.C. 2506.03).

{¶28} The first assignment of error is without merit.

{¶29} Under her second assignment of error, Ms. Marra argues the lower court erred in finding the BZA's determination was supported by a preponderance of substantial, reliable, and probative evidence.

{¶30} When reviewing an administrative decision under R.C. 2506.01, the common pleas court must consider the entire record and determine "whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000) (citations omitted). "In undertaking this review, the common pleas court, acting as an appellate court, must give due deference to the administrative agency's determination of evidentiary conflicts." *Green Vision Materials, Inc. v. Newbury Twp. Bd. of Zoning Appeals*, 11th Dist. Geauga No. 2013-G-3136, 2014-Ohio-4290, ¶50 (citation omitted). "[T]he common pleas court 'is bound by the nature of administrative proceedings to presume that the decision of the administrative agency is reasonable and valid[,]' and the burden of demonstrating the invalidity of the agency's decision rests with the

13

contesting party." *Battaglia v. Newbury Twp. Bd. of Zoning Appeals*, 11th Dist. Geauga No. 99-G-2256, 2000 WL 1804344, *3 (Dec. 8, 2000), quoting *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456 (1993). "A court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984).

{¶31} Ms. Marra contends the lower court erred in affirming the BZA's decision because she was not operating out of her home a hotel/motel or a bed and breakfast, as those terms are defined in the Zoning Resolution. We agree with Auburn's assertion on appeal that this argument is a "red herring." It is not relevant whether the use of her home met either of these definitions. Ms. Marra further contends that the BZA's decision unlawfully prohibits her from leasing her home to third parties. This argument is also not well taken. Ms. Marra is not prohibited from leasing her home in such a manner that complies with the permitted uses for an R-2 District.

{¶32} The relevant issue here is whether Ms. Marra established that the use of her home as a short-term rental for groups of people is a permitted use for an R-2 District under the Zoning Resolution. Ms. Marra argues that, in affirming the BZA's decision that she had not so established, the lower court relied on unreliable evidence and evidence outside the transcript.

{¶33} The Zoning Resolution is permissive, i.e., only the uses specified and defined in the Resolution are permitted in any given district. The only relevant use expressly permitted for an R-2 District under the Resolution is a "single-family dwelling."

14

The BZA determined that listing a residential home for the transient use of large groups or for small groups while Ms. Marra remains in the home does not qualify as "single-family dwelling" use. This decision was reached by applying the definitions of "family" and "dwelling" in the Resolution, which state as follows:

> **Dwelling:** Any building or structure (except a mobile home or recreational vehicle as defined herein) which is wholly or partly used or intended to be used for living or sleeping by one or more human occupants.
>
> **Dwelling-One Family:** A dwelling consisting of one (1) detached dwelling unit occupied by one (1) family only.
>
> **Family**: One (1) or more person related by blood, adoption, guardianship or marriage, living and cooking together as a single housekeeping unit, exclusive of live-in hired employees. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, guardianship, or marriage shall be deemed to constitute a family, exclusive of live-in hired employees. A family shall not include any society, club, fraternity, sorority, association, lodge, federation, coterie, or a like organization; any group of individuals whose association is temporary or seasonal in nature; and any group of individuals who are in a group living arrangement as the result of a criminal offense.

{¶34} Ms. Marra presented no evidence from which the BZA or the lower court could conclude that renting her home to large groups of people for short periods of time was consistent with this definition. Thus, the BZA and the lower court relied on the investigation, and testimony thereto, of the Zoning Inspector and Assistant Zoning Inspector, as well as the testimony of the Fire Chief and Ms. Marra's neighbors. Also presented at the hearing were online reviews of Ms. Marra's home on publicly available websites (Airbnb and VRBO), which stated that guests had used the home for group retreats, work training, and long weekends for large groups of adults. Ms. Marra takes issue with this online information as unauthenticated and unreliable. It was, however,

15

corroborated by her neighbors, who offered sworn testimony that they have observed large groups of people using Ms. Marra's property.

**{¶35}** Further, "the Ohio Rules of Evidence do not directly apply in administrative proceedings." *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, ¶20, citing Evid.R. 101(A). "As a general rule, administrative agencies are not bound by the strict rules of evidence applied in court." *MNH Truck Leasing Co., LLC v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin Nos. 16AP-301, *et seq.*, 2017 WL 496697, ¶12 (citation omitted). "For example, '[s]tatements or evidence that would be excluded as hearsay elsewhere are admissible in an administrative proceeding where they are not inherently unreliable and are sufficient to constitute substantial, reliable, and probative evidence.'" *Id.*, quoting *Harr v. Jackson Twp.*, 10th Dist. Franklin No. 10AP-1060, 2012-Ohio-2030, ¶24, fn. 1. "Thus, the crucial question in determining whether an administrative agency acted improperly in considering hearsay evidence is not whether such evidence was in fact considered, but whether such evidence was considered in an arbitrary fashion." *Concerned Citizens of Spring Valley v. Spring Valley Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 01 CA 0059, 2002 WL 191575, *7 (Feb. 8, 2002) (citation omitted).

**{¶36}** Finally, we reject Ms. Marra's assertion that the lower court relied on evidence outside of the transcript by referring to Wikipedia in its decision. The court merely used Wikipedia as a source to define the terms "Airbnb" and "VRBO." It did not rely on Wikipedia to uphold the determination that renting her home to large groups on these websites is a prohibited use under the Zoning Resolution.

{¶37} The BZA's conclusion that Ms. Marra's use of her home is not a permitted use in an R-2 District is supported by the preponderance of the evidence. The evidence is undoubtedly probative; it is substantial, in that Ms. Marra presented no evidence to the contrary; and it is reliable, in that the testimony was sworn and the information from the online reviews was corroborated. Ms. Marra has not established that the BZA considered the hearsay evidence arbitrarily, such that the lower court erred in also relying upon it. Accordingly, it was appropriate for the lower court to defer to the BZA's interpretation of the Zoning Resolution, and we discern no error of law that would compel us to reverse the lower court's decision to affirm the BZA's decision.

{¶38} The second assignment of error is without merit.

{¶39} The judgment of the Geauga County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.